UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUENTIN LASTER, a/k/a
Quentin Taylor,

        Plaintiff,

                                        CASE NO. 5:08-CV-10898

    v.                                  JUDGE JOHN CORBETT O'MEARA
                                        MAGISTRATE JUDGE PAUL KOMIVES

GEORGE PRAMSTALLER,
et al.

        Defendants.
_____/

## REPORT AND RECOMMENDATION ON THE DEFENDANTS' MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT (docket #65, 79, 115, 116, and 117)

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    *Sua Sponte Dismissal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
           1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
           2.    *ADA Claims–All Defendants* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
           3.    *Injunctive Relief–All Defendants* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
           4.    *Failure to Serve–Defendants Fatu and Brown* . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      C.    *Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
           1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
           2.    *Official Capacity Claims–All Defendants* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
           3.    *Personal Involvement–Defendants Pramstallar, Caruso, Armstrong, Stapleton, Vasbinder,*
                *Barrett, Budjos, Howell, Gilbert, and Scutt* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
           4.    *Absolute Immunity–Defendants Israel, Ricci, Polzien, Zeller, and Salinas* . . . . . . . . . . 15
           5.    *Eighth Amendment Claims–Various Defendants* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
                a.  Eighth Amendment Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
               b.  Defendant Bujdos . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
               c.  Cell Conditions–Resident and Corrections Officer Defendants . . . . . . . . . . . . . . . 22
           6.    *Retaliation–Defendants Jones, Clothier, Morey, Holder, and Elston* . . . . . . . . . . . . . 23
           7.    *Access to Courts–Defendant Cooke* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
           8.    *Exhaustion–Defendants Ford, Western, and Young* . . . . . . . . . . . . . . . . . . . . . . . . 27
      D.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

I.    <u>RECOMMENDATION</u>: The Court should grant the defendants' five pending motions to dismiss or for summary judgment, and should grant summary judgment to the moving defendants on plaintiff's constitutional claims under § 1983.  The Court should also *sua sponte* dismiss plaintiff's claims under the Americans with Disabilities Act for failure to state a claim, plaintiff's claims for injunctive relief as moot, and plaintiff's claims against defendants Fatu and Brown for failure to effect service of process.  If the Court accepts these recommendations, only plaintiff's claims against defendants Antonini and Scuccimarri will remain pending.

II.   <u>REPORT</u>:

A.    *Procedural Background*

Plaintiff Quentin Laster, also known as Quentin Taylor, is a former state prisoner who is currently on parole.  At the times relevant to this action, plaintiff was incarcerated in the G. Robert Cotton Correctional Facility in Jackson, Michigan.  Plaintiff commenced this action on March 4, 2008, by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983.  Plaintiff filed an amended complaint on April 5, 2010, and a more definite statement on July 7, 2010.  Magistrate Judge Hluchaniuk entered an Order on August 5, 2010, construing the more definite statement as plaintiff's amended complaint.[1]  Plaintiff names 33 defendants employed at the relevant times by the Michigan Department of Corrections (MDOC) or Corrections Medical Services (CMS): George Pramstallar, MDOC Chief Medical Officer; MDOC Direct Patricia Caruso; MDOC Head Grievance Administrator James Armstrong; MDOC Policy and Hearings Administrator Richard Stapelton; Wardens Doug Vasbinder and Debra Scutt; Deputy Warden Joe Barrett; Doctors Audberto Antonini,

---

[1]Hereinafter, plaintiff's more definite statement, entered on the Court's docket as entry #42, will be referred to as the amended complaint.

Peter Scuccimarri, and Nicolae Fatu; psychologist Ed Budjos; Assistant Deputy Warden Larry Ford; Health Unit Manager Beth Gardon Howell; Assistant Librarian Jacqueline Cooke; Resident Unit Manager Sabena Western; Assistant Resident Unit Supervisors Gena Young and Colleen Rudd; Assistant Resident Unit Manager Robin Gilbert; Administrative Law Judges Joanne Ricci, Donald Israel, Thomas Polzien, and Maribeth Zeller; Sergeants Brown and  Melinda Jones; Corrections Officers Stanley Arnold, Ed Clothier, Timothy Morley, David Pratt, and Jeffrey Elston; Resident Unit Officers Jennifer Holder, Silverio Ojeda, and James Lamb; and Hearings Investigator Joel Salinas.  Plaintiff names each defendant in his or her individual and official capacities.

Plaintiff's amended complaint alleges that various defendants denied him pain medication, issued false misconduct tickets in retaliation for his complaints about his medical treatment, and failed to honor his special accommodation notices (SANs) and his rights under the Americans with Disabilities Act (ADA).  Plaintiff seeks injunctive relief and monetary damages.  The matter is currently before the Court on five dispositive motions in which all but four of the defendants seek dismissal or summary judgment.

In the first motion, filed on October 4, 2010, defendants Caruso, Pramstallar, Stapleton, and Gilbert seek summary judgment on the basis that plaintiff has failed to establish their personal involvement in the alleged constitutional deprivations, and with respect to plaintiff's claims against them in their official capacities on the ground that they are immune under the Eleventh Amendment. The second motion pending before the Court is the motion for summary judgment filed on January 18, 2011, by defendants Arnold, Barrett, Clothier, Elston, Jones, Morey, Ojeda, Pratt, Ricci, Rudd, Salinas, Holder, Israel, Polzien, Scutt, Lamb, and Zeller.  In this motion, all the moving defendants seek summary judgment with respect to plaintiff's official capacity claims on the ground of Eleventh

Amendment immunity.  In addition, the moving defendants seek summary judgment: (1) with respect to defendants Scutt and Barrett based on their lack of personal involvement; (2) with respect to defendants Polzien, Israel, Ricci, Zeller, and Salinas based on their absolute immunity; and (3) with respect to plaintiff's claims against the remaining moving defendants, on the ground that plaintiff has failed to establish claims for retaliation and deliberate indifference.  In the third motion, filed on May 19, 2011, defendant Cooke seeks dismissal of plaintiff's claims against her on the ground that he has failed to state a claim for relief based on a denial of access to courts, and with respect to plaintiff's official capacity claim on the ground that she is entitled to Eleventh Amendment immunity.  In the fourth pending motion, filed on May 23, 2011, defendants Vasbinder, Armstrong, Howell, and Bujdos seek summary judgment based on their lack of personal involvement, Eleventh Amendment immunity, and, with respect to plaintiff's claims against defendant Bujdos, on the ground that plaintiff has failed to establish a claim for deliberate indifference.  Finally, on May 27, 2011, defendants Western, Ford, and Young filed a motion for summary judgment, arguing that plaintiff has failed to exhaust his administrative remedies with respect to his claims against them.

On December 2, 2010, plaintiff filed a response to the first pending motion for summary judgment filed by defendants Caruso, Pramstaller, Stapleton, and Gilbert.  As of the date of this Report, plaintiff has not filed a response to any of the other motions, despite having been ordered to do so.[2]  Further, four defendants–defendants Antonini, Scuccimarri, Fatu, and Brown–have yet

---

[2]Specifically, on January 31, 2011, Magistrate Judge Hluchaniuk entered an Order requiring plaintiff to respond to the second dispositive motion by March 17, 2011.  On June 1, 2011, I entered an Order requiring plaintiff to respond to the third and fourth dispositive motions by July 15, 2011.  Finally, on June 6, 2011, I entered another Order requiring plaintiff to respond to the fifth dispositive motion by July 15, 2011.  Although plaintiff's release on parole and changes of address, of which he apparently did not timely inform the Court, caused some orders entered in this case to be returned to

to be served.  It appears from the docket that the Marshal is attempting to effectuate service on defendants Antonini and Scuccimarri.  With respect to defendant Fatu, on April 6, 2011, Magistrate Judge Hluchaniuk entered an Order requiring plaintiff to provide a mail address by May 6, 2011, so that service could be effected.  With respect to defendant Brown, Magistrate Judge Hluchaniuk entered an Order on April 13, 2011, for plaintiff to show cause by May 4, 2011, why his claims against defendant Brown should not be dismissed in light of Brown's death.  Plaintiff has not filed a response to either of these Orders.

For the reasons that follow, the Court should grant defendants' pending dispositive motions, and enter summary judgment in their favor.  The Court should also *sua sponte* dismiss plaintiff's claims for injunctive relief and under the Americans with Disabilities Act.  Finally, the Court should *sua sponte* dismiss plaintiff's claims against defendants Fatu and Brown for failure to serve.  If the Court accepts these recommendations, only plaintiff's claims against defendants Antonini and Scuccimarri will remain before the Court.

B.      *Sua Sponte Dismissal*

Before addressing defendants' dispositive motions, the Court should *sua sponte* dismiss plaintiff's claims brought under the Americans with Disabilities Act and for injunctive relief for failure to state a claim upon which relief may be granted, and should dismiss plaintiff's claims against defendants Fatu and Brown based on his failure to provide an address for service.

1.      *Legal Standard*

The *in forma pauperis* statute, pursuant to which plaintiff is proceeding, provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

_____

the Court, none of the scheduling orders has been returned as undeliverable.

dismiss the case at any time if the court determines that . . . the action . . . (ii) fails to state a claim on which relieve may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(b)(ii)-(iii).  Further, the Prison Litigation Reform Act (PLRA) provides that a court may *sua sponte* "dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief."  42 U.S.C. § 1997e(c)(1).  Where an *in forma pauperis* complaint fails to state a claim, dismissal under § 1915(e)(2)(b) is mandatory.  *See Bilal v. Driver*, 251 F.3d 1346, 1348 (11th Cir. 2001); *Rogler v. United States Dep't of Health & Human Servs.*, 620 F. Supp. 2d 123, 128 (D.D.C. 2009); *Johnson v. U.K. Government*, 608 F. Supp. 2d 291, 293 (D. Conn. 2009); *Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

2.     *ADA Claims–All Defendants*

Although not entirely clear, it appears that in addition to his federal constitutional claims plaintiff is also attempting to assert claims against defendants under the Americans with Disabilities Act (ADA).  The Court should conclude that these claims fail as a matter of law, and should dismiss them *sua sponte*.

Plaintiff names only individuals as defendants in his amended complaint, and individual defendants are not proper parties under the ADA.  Title II of the ADA provides, in relevant part, that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42

6

U.S.C. § 12132.  Similarly, Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794(a).  The ADA further provides, however, that "[t]he term 'public entity' means–(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)."  42 U.S.C. § 12131(1).  By its terms, the statute does not apply to individuals, and thus "public entity" under the Act does not include an individual prison official.  Accordingly, plaintiff's complaint fails to state a claim against the individual defendants under the ADA.  *See Lee v. Michigan Parole Bd.*, 104 Fed. Appx. 490, 493 (6th Cir. 2004); *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (Roberts, J.); *Damron v. North Dakota Comm'r of Corrections*, 299 F. Supp. 2d 970, 976 (D.N.D. 2004), *aff'd*, 127 Fed. Appx. 909 (8th Cir. 2005).  Accordingly, the individual defendants are entitled to dismissal with respect to plaintiffs' ADA claims.

      3.    *Injunctive Relief–All Defendants*

      Likewise, the Court should dismiss *sua sponte* plaintiff's claims for injunctive relief. Plaintiff is no longer incarcerated, having been released on parole.  It is well established that "[a] prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility."  *Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002); *see also*, *Incumaa v. Ozmint*, 507 F.3d 281, 286-87 (4th Cir. 2007) (citing cases from Second, Third,

and Eighth Circuits); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Because plaintiff is no longer subject to the care of the official he claims was denying him his constitutional rights, his request for injunctive relief is moot. *See Candelaria v. Coughlin*, 787 F. Supp. 368, 378 (S.D.N.Y.), *aff'd*, 979 F.2d 845 (2d Cir. 1992).[3] Accordingly, the Court should dismiss plaintiff's claims for injunctive relief pursuant to § 1915(e)(2)(B)(ii).

    4.    *Failure to Serve–Defendants Fatu and Brown*

    Finally, the Court should dismiss plaintiff's claims against defendants Fatu and Brown based on plaintiff's failure to effect service on these defendants. "Before a court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). To properly effect service, a plaintiff must serve a copy of the summons and complaint on the defendant in one of the manners prescribed by FED. R. CIV. P. 4(e), and must do so within 120 days after the complaint is filed, unless the Court extends the time based upon a showing of good cause. *See* FED. R. CIV. P. 4(m). Where, as here, a plaintiff has been granted *in forma pauperis* status the Court, through the United States Marshal, bears primary responsibility for effecting service of process. *See Wright v. Lewis*, 76 F.3d 57, 59 (2d Cir. 1996); FED. R. CIV. P. 4(c)(3). Thus, the failure of the Marshal to effect service, through no fault of the plaintiff, constitutes "good cause" for extending the time for service under Rule 4(m). *See Rance v. Rocksolid Granite USA, Inc.*, 583 F.3d 1284, 1287 (11th Cir. 2009) (citing cases); *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996).

    Nonetheless, "[w]hile *in forma pauperis* plaintiffs should not be penalized for a marshal's

---

    [3]Of course, plaintiff's release does not moot his entire case, because plaintiff's request for monetary damages presents a live controversy notwithstanding his release. *See Boag v. MacDougall*, 454 U.S. 364, 364 (1982) (per curiam).

failure to obtain proper service, it [is the plaintiff's] responsibility to provide proper addresses for service." *Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir. 1993). Here, the docket reflects that the Marshal attempted to effect service on Fatu both through the MDOC and CMS, but he is no longer employed by CMS and could not be served at his last known address. The docket also reflects that defendant Brown is deceased. Plaintiff has not provided any information to locate and effect service on Fatu or Brown's estate, has not responded to the Court's Orders requiring him to provide Fatu's address or show cause why his claims against Brown should not be dismissed, and has otherwise failed to take any other action to ensure that these defendants are served. In these circumstances, plaintiff bears the responsibility for the failure to effectuate service, and the Court should dismiss plaintiff's claims against defendants Fatu and Brown pursuant to Rule 4(m). *See Crist v. Evans*, No. 05-CV-74803, 2007 WL 3038038, at *1-*2 (E.D. Mich. Oct. 18, 2007) (Steeh, J., adopting recommendation of Majzoub, M.J.); *VanDiver v. Martin*, 304 F. Supp. 2d 934, 942-43 (E.D. Mich. 2004) (Cleland, J.); *see also*, *Bowman v. Johnson*, No. 3:08CV449, 2010 WL 1225693, at *1 (E.D. Va. Mar. 26, 2010); *Haynes v. Ulep*, No. 5:06CV00085, 2007 WL 624053, at *2 (E.D. Ark. Feb. 23, 2007).

C.      *Summary Judgment*

        1.      *Legal Standard*

        Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact

9

is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52

(citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must

view the evidence in a light most favorable to the non-movant as well as draw all reasonable

inferences in the non-movant's favor.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d

603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of

material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party

need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the

burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district

court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*

*Corp.*, 477 U.S. at 325.  "Once the moving party satisfies its burden, 'the burden shifts to the

nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell*

*Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than

present some evidence on a disputed issue.  As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the
> nonmoving party for a jury to return a verdict for that party.  If the [non-movant's]
> evidence is merely colorable, or is not significantly probative, summary judgment
> may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23;

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he

existence of a mere scintilla of evidence in support of the non-moving party's position will not be

sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

2.    *Official Capacity Claims–All Defendants*

All of the defendants move for dismissal or summary judgment of plaintiff's claims against them in their official capacities on the ground that they are immune from suit under the Eleventh Amendment. The Court should agree.

To the extent plaintiff is suing defendants in their official capacities, they are immune from suit. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the amendment expressly prohibits only suits against states by citizens of other states, the Supreme Court has long held that the Eleventh Amendment also bars suits by citizens of the state being sued. *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion). Further, as the Supreme Court made clear in *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), the Eleventh Amendment bars suits against state officials sued in their official capacity. *See id.* at 71; *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000). Accordingly, the Court should grant summary judgment to all of the defendants with respect to plaintiff's claims against them in their official capacities.

3.    *Personal Involvement–Defendants Pramstallar, Caruso, Armstrong, Stapleton, Vasbinder, Barrett, Budjos, Howell, Gilbert, and Scutt*

Defendants Pramstallar, Caruso, Armstrong, Stapleton, Vasbinder, Barrett, Budjos, Howell, Gilbert, and Scutt seek summary judgment on the basis that plaintiff has failed to establish that they

11

were personally involved in the alleged deprivations of plaintiff's constitutional rights. The Court should agree.

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). It is well established that liability in a § 1983 action cannot be based on a theory of *respondeat superior. See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also, Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). As the Sixth Circuit has stated:

> "Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate*."

12

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 73, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see also, Monell*, 436 U.S. at 693-95; *Birell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976). Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).

With respect to these defendants, plaintiff's amended complaint alleges only that they failed to properly train or supervise corrections officers, or failed to respond to his complaints and grievances. *See* Amended Compl., ¶¶ 2-3, 9-10, 31, 34, 37, 42, 51, 56, 58. In their various affidavits, these defendants have each denied any personal involvement in the alleged deprivations of plaintiff's rights. In his one response, filed with respect to the first dispositive motion filed by defendants, plaintiff does not offer any argument or evidence that these defendants had any personal involvement; he merely reiterates the allegations of his complaint. Plaintiff's general allegations that the supervisory defendants were responsible for setting prison policy are insufficient to state a claim. *See Pravda v. City of Albany, N.Y.*, 956 F. Supp. 174, 182 (N.D.N.Y. 1997); *cf. Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (a "general responsibility for supervising the operation of a prison is insufficient to establish the personal involvement required to support liability.").

13

Further, defendants' alleged failure to respond to plaintiff's complaints and letters is insufficient to show that they personally encouraged or participated in the alleged constitutional violations. *See Proctor v. Appelgate*, 661 F. Supp. 2d 743, 765-66 (E.D. Mich. 2009) (Borman, J., adopting report of Hluchaniuk, M.J.); *Elliott v. Dorian*, No. 05-1667, 2007 WL 120031, at *4 (W.D. Pa. Jan. 10, 2007); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506-07 (S.D.N.Y. 2002).  Finally, nothing in the Constitution requires a state to establish a prison grievance system, nor to investigate or respond to grievances submitted pursuant to prison policy. *See Carlton v. Jondreau*, 76 Fed. Appx. 642, 644 (6th Cir. 2003); *Miller v. Bock*, 55 Fed. Appx. 310, 311-12 (6th Cir. 2003); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986).  Likewise, plaintiff had no constitutional right to have prison officials conduct an investigation of his allegations at his request. *See Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 438 (S.D.N.Y. 2004).  Thus the denial of, or failure to consider, a grievance does not state a constitutional claim under § 1983 or render the reviewing official personally involved in the deprivation alleged in the grievance. *See Lee v. Michigan Parole Bd.*, 104 Fed. Appx. 490, 493 (6th Cir. 2004); *Martin v. Harvey*, No. 00-1439, 2001 WL 669983, at *2 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (as against defendants whose only involvement was the denial of administrative remedies and the "failure to remedy the alleged retaliatory behavior[,]" "[t]here is no allegation that any of these defendants directly participated . . . in the claimed . . . acts[].");  *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989) ("The mere fact that these defendants found plaintiff Martin's grievance concerning the seizure to be without merit is insufficient to state a claim against them.").  Accordingly, the Court should conclude that defendants Pramstallar, Caruso, Armstrong, Stapleton, Vasbinder, Barrett, Budjos,

Howell, Gilbert, and Scutt are entitled to summary judgment, based on plaintiff's failure to establish their personal involvement in the alleged constitutional violations.[4]

      4.    *Absolute Immunity–Defendants Israel, Ricci, Polzien, Zeller, and Salinas*

The Court should also grant summary judgment to defendants Israel, Ricci, Polzien, Zeller, and Salinas on the basis that these defendants are immune from suit. As both plaintiff's amended complaint and defendants' affidavits establish, defendants Israel, Ricci, Polzien, and Zeller are Administrative Hearings Officers who presided over plaintiff's misconduct hearings. Defendant Salinas is a Hearings Investigator. Plaintiff's claims against these defendants relate to their decisions to find him guilty in the misconduct hearings. He contends that the misconduct tickets were issued in retaliation for his filing of grievances, and that these defendants likewise had a retaliatory motive in upholding the misconduct tickets. However, these defendants are immune from suit on these bases.

Although § 1983, by its language, provides for an action against "every person" who violates another person's rights under color of state law, the Supreme Court has recognized "that Congress did not intend § 1983 to abrogate immunities 'well grounded in history and reason.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). Most officials are protected by qualified immunity, which protects officials to the extent that their conduct does not violate clearly established rights of which a reasonable official would have been aware. However, the Court has also recognized "that some officials perform 'special functions' which, because of their similarity to functions that would have been immune when Congress enacted

---

     [4]There is one claim against defendant Bujdos, relating to plaintiff's mental health, which does allege Budjos's personal involvement. This claim is discussed in part C.5, *infra*

§ 1983, deserve absolute protection from damages liability." *Buckley*, 509 U.S. at 268-69.

"A long line of th[e] [Supreme] Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam) (citing cases).  As the Court has noted, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872).  Further, "judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles*, 502 U.S. at 11; *see also, Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Immunity can be overcome only in two cases:  (1) when the judge takes non-judicial actions, that is, actions not taken in the judge's official capacity; and (2) when the judge takes action, whether judicial or not, in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12.  "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself[.]" *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).  The inquiry focuses on the nature and function of the act, not on the act itself. *Id.*; *Mireles*, 502 U.S. at 13.  Thus, a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive." *Forrester v. White*, 484 U.S. 219, 227 (1988); *see also*, *Mireles*, 502 U.S. at 11 ("judicial immunity is not overcome by allegations of bad faith or malice"); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly.").  Because of the functional nature of this immunity, it is has been extended to those, such as administrative law judges, who exercise quasi-judicial functions, and others "who perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985).

16

In *Shelley v. Johnson*, 849 F.2d 228 (6th Cir. 1988) (per curiam), the Sixth Circuit expressly held that Michigan hearing officers are independent and exercise adjudicatory functions. Under Michigan law, hearing officers are licensed attorneys, not under the supervision of the prisons' wardens, and subject to disqualification for bias. Similarly, Michigan law details their duties with respect to the taking of evidence and requires that their decisions be in writing and include findings of fact. Finally, hearing officer decisions are subject to appellate review by the Michigan courts. *See Shelley*, 828 F.2d at 230 (discussing MICH. COMP. LAWS §§ 791.251-.255). Accordingly, the court concluded that the Michigan prisoner hearing officer's "role for all practical purposes is similar to that of an administrative law judge and as such he should be entitled to absolute judicial immunity[.]" *Id.* Thus, under *Shelley*, it is clear that an MDOC hearing officer "is entitled to absolute judicial immunity from damages for all judicial acts performed in the course of conducting misconduct hearings." *Branham v. Spurgis*, 720 F. Supp. 605, 607 (W.D. Mich. 1989); *see also*, *Reynolds-Bey v. Harris*, ___ Fed. Appx. ___, 2011 WL 1396786, at *4-*5 (6th Cir. Apr. 13, 2011); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007). This immunity also extends to Hearings Investigators such as defendant Salinas. *See Umbarger v. Corrections Med. Serv.*, 93 Fed. Appx. 734, 736 (6th Cir. 2004); *Jones v. Bonevelle*, No. 2:08-cv-133, 2010 WL 5810650, at *4 (W.D. Mich. Aug. 20, 2010); *Evans v. Eaton*, No. 09-CV-11856, 2009 WL 1606492, at *2 (E.D. Mich. June 4, 2009) (Edmunds, J.). Plaintiff's allegations against these defendants relate to "actions taken in adjudicating plaintiff's . . . misconduct hearings . . . which were clearly within the defendants' jurisdiction as professional hearing officers. Therefore, the defendants are entitled to absolute immunity[.]" *Sullivan v. Ford*, 828 F. Supp. 480, 482 (E.D. Mich. 1993) (Gadola, J.). Accordingly, the Court should grant summary judgment to defendants Israel, Ricci, Polzien, Zeller,

17

and Salinas.

    5.    *Eighth Amendment Claims–Various Defendants*

Plaintiff also raises various Eighth Amendment claims against several of the defendants. Specifically, plaintiff alleges that defendant Budjos denied him mental health care, and that the defendants responsible for his housing–the resident unit managers and supervisors, and the corrections officers–deprived him of appropriate cell conditions. The Court should conclude that defendants are entitled to summary judgment with respect to these claims.

*a.  Eighth Amendment Generally*

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986). The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials,

18

who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates."

*Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103). The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard,

> a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *Id*. at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or, knowing of it, they acted reasonably under the circumstances. *Id*. at 844-45.

### b. Defendant Bujdos

With respect to defendant Bujdos, a prison psychologist, plaintiff alleges that defendant failed to provide him with psychological treatment, concluding that plaintiff had no need for such treatment. *See* Amended Compl., ¶ 55. In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).

Here, plaintiff has failed to present any allegations or evidence that defendant Bujdos was deliberately indifferent to plaintiff's serious psychological needs. First, plaintiff has failed to allege a serious medical need. Although he vaguely alleges that he had some psychological problem, he does not allege what that problem was, or how it was inadequately treated. Nor has he provided any evidence in response to defendants' dispositive motions demonstrating that he in fact had a

psychological condition that required treatment.  To allege a serious medical need, a plaintiff must "allege[] *facts* to show that his medical need is sufficiently 'serious' such that the 'failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain.'"  *Smedley v. Reid*, No. 08cv1602, 2010 WL 391831, at *10 (S.D. Cal. Jan. 27, 2010) (emphasis added) (quoting *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002)).  Plaintiff's conclusory allegations that he had psychological problems are insufficient.  *See Denson v. Crish*, No. 3:10 CV 1440, 2010 WL 3808013, at * (N.D. Ohio Sept. 27, 2010) (plaintiff failed to allege serious medical need where he "state[d] he has 'mental health issues' but [gave] no indication as to what those issues may be and d[id] not describe his condition."); *cf. Bass v. Neotti*, No. 09cv1850, 2010 WL 3339490, at *6 (S.D. Cal. Aug. 23, 2010) (internal quotation omitted) ("Although Plaintiff alleges that he suffered injury to his testicles in particular, he does not describe his physical condition in any detail or set forth any facts regarding other injuries sustained from the beating. As such, Plaintiff has not plead facts sufficient to show the failure to treat his condition could result in further significant injury or the unnecessary and wanton infliction of pain."); *Haley v. CMS*, No. 1:09-CV-144, 2009 WL 4559229, at *2 n.1 (E.D. Mo. Nov. 30, 2009) (plaintiff's allegation "that defendants acted with deliberate indifference to his 'very serious and severe diabetic and other medical needs' insufficient to state a claim).

Further, plaintiff has failed to show that defendant Bujdos was deliberately indifferent to any psychological need he may have had.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.  As the Seventh Circuit has

explained, "'[d]eliberate indifference' means *recklessness* in a criminal, subjective sense: disregarding a risk of danger so substantial that knowledge of the danger can be inferred. Such disregard is tantamount to intending that the injury occur." *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992) (quoting *McGill v. Duckworth*, 941 F.2d 344, 348 (7th Cir. 1991)) (citations omitted); *accord Farmer*, 511 U.S. at 836 (equating "deliberate indifference" to the "recklessness" standard under criminal law); *Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994) (negligence insufficient to establish deliberate indifference); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988) (gross negligence insufficient). Here, plaintiff has made no allegations which could support a finding that defendant Bujdos was deliberately indifferent. Accordingly, the Court should grant summary judgment to defendant Bujdos with respect to plaintiff's failure to treat claim.

### c. *Cell Conditions–Resident and Corrections Officer Defendants*

Plaintiff also alleges that defendants failed to provide him with handicap accessible showers and toilets from May through October, 2006. *See* Amended Compl., ¶¶ 7-8. He further alleges that defendants Lamb, Gilbert, Ford, Scutt, Armstrong, and Caruso forced him to stay in a cell for four days with no running water or flushable toilet, and poor air circulation. *See id.*, ¶ 36(A). These allegations fail to state an Eighth Amendment claim.

Plaintiff has provided no allegations or evidence suggesting that he was subjected to a risk of serious harm by the failure of defendants to provide him with handicap-accessible toilets and showers for a six month period, or for placing him in a cell with poor air circulation and with no running water or flushable toilet for four days. In order to establish an Eighth Amendment violation based on the conditions of his confinement, plaintiff must show that the conditions resulted in

"extreme deprivations" of basic necessities.  *Hudson*, 503 U.S. at 8-9.  Temporary placement in a cell with no flushable toilet, *see Abdur-Reheem-X v. McGinnis*, No. 99-1075, 1999 WL 1045069, at *2 (6th Cir. Nov. 12, 1999); *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992), or with no running water, *see Diaz v. Cumberland County Jail*, No. 10-3932, 2010 WL 3825704, at *4 (D.N.J. Sept. 23, 2010); *Gibert v. Anderson County Sheriff's Office*, No. 0:06-1853, 2007 WL 328840, at *8 (D.S.C. Feb. 5, 2007) (citing cases), does not state an Eighth Amendment claim.  In short, plaintiff has not made any allegations or provided any evidence that would support a "finding that he was exposed to an unreasonable and indecent risk of harm or that the harm was inflicted on him as a form of punishment."  *Ford v. Mercer County Correctional Ctr.*, 171 Fed. Appx. 416, 421 (3d Cir. 2006) (citing *Helling*, 509 U.S. at 36); *see also*, *Harris v. Fleming*, 839 F.2d 1232, 1234-36 (7th Cir. 1988) (allegations that plaintiff was housed in filthy, roach infested cell for one month, denied toilet paper for five days, and denied soap, toothpaste, and toothbrush for ten days did not state Eighth Amendment claim).  Accordingly, the Court should conclude that defendants are entitled to summary judgment with respect to plaintiff's conditions of confinement claims.

> 6.   *Retaliation–Defendants Jones, Clothier, Morey, Holder, and Elston*

Plaintiff alleges that defendants Jones, Clothier, Morey, Holder, and Elston retaliated against him for his grievances and complaints regarding the denial of his accommodations and requests for medical care.  Specifically, plaintiff alleges that these defendants retaliated against him by filing false misconduct tickets.[5]  The Court should conclude that these defendants are entitled to summary judgment with respect to plaintiff's retaliation claims.

---

[5]Plaintiff also alleges that the supervisory and Hearings Officer defendants retaliated against him, but the claims against these defendants fail as a matter of law based on the defendants' lack of personal involvement or absolute immunity.

In order to succeed on his retaliation claim, plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (plurality op.).  However, if the "defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id*. at 399.  While the adverse action inquiry is ordinarily a question of fact for the jury, some "adverse actions" are so *de minimis* that they fail to state a retaliation claim as a matter of law.  *See Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002); *Thaddeus-X*, 175 F.3d at 398-99.

As noted above, if "defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399.  Here, each of the defendants avers that they did not retaliate against plaintiff, and that they would have taken the same actions–*i.e.*, issued the misconduct tickets–even in the absence of plaintiff's protected activity.  Plaintiff has presented no evidence to rebut these averments, and his complaint merely alleges in conclusory fashion that defendants retaliated against him.  He does not, however, provide any factual allegations which show a causal connection between his protected activity and the misconduct tickets.  Plaintiff provides no specific allegations from which a retaliatory motive may be inferred.  Such "conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a claim under § 1983." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (internal quotation omitted); *see also, Cox v. Jackson*, 579 F. Supp. 2d 831, 848 (E.D. Mich. 2008) (Rosen J., adopting Report of Komives, M.J.).

24

Further, plaintiff cannot succeed on these retaliation claims because he was found guilty on all of the misconduct tickets following hearings. "A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir. 2005) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) (alteration in original). Because the misconduct hearing reports attached to defendants' affidavits establish that there was some evidence to support the misconduct charges, plaintiff's retaliation claims fail as a matter of law. For these reasons, the Court should grant summary judgment to defendants on plaintiff's retaliation claims.

7.      *Access to Courts–Defendant Cooke*

With respect to defendant Cooke, plaintiff alleges only that she "had plaintiff's legal aid assistance stopped, after she succeeded in getting plaintiff's case against the MDOC dismissed by not providing court ordered photocopies." Amended Compl., ¶ 19. This claim fails to state a claim for denial of access to courts, and thus the Court should grant summary judgment to defendant Cooke.

Prisoners have a fundamental right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). "The right springs from the Due Process Clauses of the Fifth and Fourteenth Amendments and the right of petition found in the First Amendment," *Hodge v. Prince*, 730 F. Supp. 747, 751 (N.D. Tex. 1990), as well as from the Privileges and Immunities Clause of Article IV. *See Chambers v. Baltimore and Ohio R.R.*, 207 U.S. 142, 148 (1907). A prisoner's access to the courts must be adequate, effective and meaningful. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984); *Ryland v. Shapiro,* 708 F.2d 967, 972 (5th Cir. 1983). A prisoner asserting a denial of access to courts claim must satisfy the constitutional standing requirement by alleging an actual

25

injury. *See Lewis v. Casey,* 518 U.S. 343, 349, 351-53 (1996). To meet this requirement, a plaintiff must show that the actions of the prison officials "hindered the prisoner's efforts to pursue a nonfrivolous claim." *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996); *accord Lewis*, 518 U.S. at 353; *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996); *Stewart v. Block*, 938 F.Supp. 582, 586 (C.D. Cal. 1996) (plaintiff must show "a specific instance in which he was actually denied access to the courts.") (internal quotation omitted). Further, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines," and thus the right is limited to safeguarding prisoners' ability "to attack their sentences, either directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355. In other words, "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir.1999) (en banc). Under *Lewis,* dismissal is appropriate where a prisoner fails to allege a specific, litigation-related detriment resulting from the prison official's conduct. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

> As the Supreme Court has explained, to establish an access to courts claim,
>
> the named plaintiff must identify a nonfrivolous, arguable, underlying claim . . . . It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Here, plaintiff has failed to allege, or provide evidence of, any specific, litigation-related detriment resulting from defendant Cooke's alleged actions, nor has he identified "a nonfrivolous, arguable, underlying claim," *Christopher*, 536 U.S. at 415, lost by defendant's actions.  He alleges only vaguely that his "case against the MDOC was dismissed," but does not identify the case, the claims raised, or the basis of the dismissal.  This generic allegation does not allege any specific, litigation related harm to a nonfrivolous challenge to any prisoner's conviction or conditions of confinement, and is inadequate to state a claim under *Lewis*.  Accordingly, the Court should grant summary judgment to defendant Cooke.

       8.     *Exhaustion–Defendants Ford, Western, and Young*

Finally, defendants Ford, Western, and Young seek summary judgment on the ground that plaintiff has failed to exhaust his administrative remedies with respect to his claims against them. The Court should agree.

Pursuant to the Prison Litigation Reform Act (PLRA), inmates challenging their conditions of confinement must exhaust their administrative remedies before pursuing a federal civil rights action.  Specifically, the PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  In order to properly exhaust a civil rights claim, a prisoner must comply with the prison system's "procedural rules, including deadlines, as a precondition to bringing suit in federal court."

27

*Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  As the Supreme Court recently explained, the scope of

a prisoner's obligation to exhaust is defined not by the PLRA itself, but by the prison's grievance

procedures:

> [T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust."  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones v. Bock*, 549 U.S. 199, 218 (2007) (citations omitted).

Michigan provides for a three-step grievance procedure.  A Step I grievance is directed to

the Step I Grievance Coordinator at the facility in which the prisoner is incarcerated.  If the prisoner

is dissatisfied with the Step I response, she may file a Step II appeal to the Warden of the facility.

If the prisoner is again dissatisfied with the Step III response, she may file a Step III appeal to the

Director of the Department of Corrections or her designee.  *See* MICH. DEP'T OF CORRECTIONS

POLICY DIRECTIVE 3.02.130(V), (BB), (FF) (effective July 9, 2007).  The Policy Directive provides

that a prisoner must include "the <u>facts</u> involving the issue being grieved (i.e., who, what, when,

where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved

are to be included."  *Id.*, § (R).

Here, the uncontroverted evidence submitted by defendants reveals that petitioner filed 23

grievances that were pursued through Step III and which involved events at the Cotton Correctional

Facility.  *See* Def.s' Mot, docket #117, Exs. D-AA.  The bulk of these grievances relate to plaintiff's

medical care or accommodations, and do not name defendants Young, Western, or Ford, nor provide

any information to suggest that they are included within the grievance.  *See id.*, Exs. E-G, J-M, O-Q,

V. Other grievances relate to his allegations of false misconduct tickets, and do not name defendants Young, Western, or Ford. *See id.*, Exs. R, AA. Others allege that he was denied his property, deprived of legal materials, harassed, assaulted by prisoner, took his property, or improperly transferred him, and again fail to name defendants Young, Western, or Ford, or to provide any information suggesting that they are included within the grievance. *See id.*, Ex. F, I, N, S-T, W-Z. Still others were rejected for procedural problems, which went uncorrected by plaintiff. *See id.*, Exs. H, S, T, AA.

A review of these grievances shows that plaintiff has failed to properly exhaust his administrative remedies with respect to the moving defendants. The only grievances which name defendants Young, Western, or Ford are attached at Exhibits U, V, W, Y, and AA . The grievance attached as Exhibit U names defendant Western, along with other defendants, but does not name defendants Young or Ford. Further, the grievance was rejected as containing multiple issues in violation of the grievance policy, and plaintiff was instructed that he could resubmit his grievance at Step I. *See id.*, Ex. U; *see also*, MDOC POLICY DIRECTIVE 03.02.130(G)(1) (a grievance shall be rejected if it "contains multiple unrelated issues."). Plaintiff did not resubmit this grievance. In the grievance attached as Exhibit V, plaintiff named defendant Young, but only at Step II, and only claiming that defendant Young was not a proper grievant respondent. *See* Def.s' Br., Ex. V. These allegations do not relate to plaintiff's claims against defendant Young set forth in the complaint. The same holds true for the grievance attached as Exhibit X, which does not name defendants Young and Western until Step II. *See id.*, Ex. X. The grievances submitted as Exhibits Y and AA named, respectively, defendants Young and Western (Exhibit Y) and, arguably, all of the defendants (Exhibit AA), but each of these grievances was returned as being improperly filed directly at Step

III, with instructions that plaintiff could submit the grievances at Step I. *See id.*, Ex. Y & AA. Plaintiff never did so. Thus, plaintiff did not properly exhaust his claims against defendants Young, Western, and Ford by naming them in grievances setting forth the claims raised in the complaint and pursuing these grievances through each of the three steps of the Michigan grievance process. Thus, plaintiff's claims against defendants Ford, Young, and Western are unexhausted, and the Court should grant summary judgment with respect to these defendants.

Moreover, even if the claims against these defendants were properly exhausted, these defendants are entitled to dismissal of the claims on the merits. *See* 42 U.S.C. § 1997e(c)(2) (court may dismiss unexhausted claim on the merits). For the most part, plaintiff's allegations against defendants Ford, Young, and Western, fail to allege personal involvement because they are premised on these defendants' failure to correct the allegedly unconstitutional behavior of other defendants, or on these defendants' handling of his grievances. As explained above, such allegations are insufficient to allege that these defendants were personally involved in the alleged deprivations of plaintiff's rights. To the extent plaintiff does allege personal involvement by these defendants, his claims mirror the retaliation and conditions of confinement claims which, as explained above, fail as a matter of law. Accordingly, even if the Court concludes that plaintiff's claims against defendants Ford, Western, and Young are properly exhausted, the Court should grant summary judgment to these defendants on the merits.

D.   *Conclusion*

In view of the foregoing, the Court should grant defendants' five pending dispositive motions, and grant summary judgment in favor of the moving defendants. The Court should also *sua sponte* dismiss plaintiff's claims under the ADA and for injunctive relief, as well as his claims

against defendants Fatu and Brown.  If the Court accepts this recommendation, only plaintiff's claims against defendants Antonini and Succiamarri will remain pending.

III.      <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

      The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

      Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              <u>s/Paul J. Komives</u>                 
                                            PAUL J. KOMIVES
                                            UNITED STATES MAGISTRATE JUDGE

Dated: <u>9/7/11</u>

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record and  by
electronic means or U.S. Mail on September 7,  2011.

s/Eddrey Butts
Case Manager